# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7268 | **DATE** | 12/19/2003 |
| **CASE TITLE** | FoodComm Intl vs. Patrick Barry | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due___. Reply to answer brief due___.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, the Court hereby denies plaintiff's motions for civil contempt sanctions [59-1] and to compel the production of documents relating to Culley Marks. In regards to the plaintiff's motion to compel production of documents relating to Fleet Bank [69-1], the Court hereby grants in part and denies in part the motion. Furthermore, the Court denies plaintiff's motions for leave to file a second amended complaint [72-1] and to compel the production of documents relating to redistribution agreements [77-1]. Plaintiff's emergency motion to take the deposition of Steven Levine [91-1] is denied as moot. Enter Memorandum Opinion.
(11) ■ [For further detail see memorandum opinion attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 22 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | 97 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | 03 DEC 19 AM 6:01 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DEC 2 2 2003

| | |
|---|---|
| FOODCOMM INTERNATIONAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 7268 |
| ) | |
| PATRICK JAMES BARRY, ) | |
| CHRISTOPHER PAUL LEACY, and ) | |
| OUTBACK IMPORTS, INC., and ) | |
| EMPIRE BEEF COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Foodcomm's ("Foodcomm") motion for civil contempt and sanctions against Defendants Patrick James Barry ("Barry") and Christopher Paul Leacy ("Leacy"). Foodcomm has also filed a motion to compel the production of documents relating to Fleet Bank and Culley Marks, a motion for leave to file a second amended complaint, a motion to compel the production of documents relating to redistribution agreements, and an emergency motion to compel the deposition of Steven Levine. We grant the above motions in part and deny them in part.

I. Motion for Civil Contempt Sanctions

Foodcomm contends that Barry and Leacy violated the terms of the preliminary

1

injunction order issued by Judge Coar on November 12, 2002. Foodcomm claims that Barry and Leacy should be held in contempt because after November 12, 2002, they operated their own business at the same location that they used when working for Defendant Empire Beef Company, Inc. ("Empire") and because they purchased meat from Empire. Judge Coar stated in his November 12, 2002 order that Barry and Leacy are "enjoined from directly or indirectly providing services of any kind to or for Empire Beef, Inc., its affiliates or agents." The order similarly prohibited Barry and Leacy from providing services to Outback Imports.

Judge Coar's injunction order prohibited Barry and Leacy from providing services to Empire and Outback Imports. It did not prevent them from operating their own business and purchasing meat from Empire or from working for other employers and purchasing beef from Empire. In regards to the location of their business which is now leased by Barry's and Leacy's new employer, Colorado Foods, nothing in Judge Coar's order prohibited Barry and Leacy from operating at the same location as long as they are not providing services to Empire or Outback Imports. Therefore, we deny the motion for civil contempt and for sanctions.

## II. July 18, 2003, Motion to Compel

On July 18, 2003, Foodcomm also filed a motion to compel the production of Fleet Bank and Culley Marks documents. Foodcomm first contends that Defendants have not properly responded to inquiries relating to communications between Defendants and Fleet Bank. (document production request numbers 21-28). Defendants claim that they already produced all the documents in their possession that are requested in numbers 21-24. However, Foodcomm is concerned that Defendants only submitted documents in which Barry, Leacy, or Outback Imports

2

are specifically mentioned. In order to prevent any misunderstanding between the parties, we shall order Defendants to produce all communications between Defendants and Fleet Bank that in any way relate to Barry, Leacy, or Outback Imports, whether or not the parties are specifically mentioned in the communications.

Defendants also objected to the production of documents relating to numbers 25-28 because they claim that the requests are overly broad and seek irrelevant documents that are confidential. In the requests, Foodcomm seeks production of all communications between Empire and Fleet Bank relating to the $35 million revolving facility Empire established with Fleet Bank, the $4 million term loan established with Fleet Bank, and the $39 million secured credit facility established with Fleet Bank. Foodcomm also seeks in request number 28 to compel production of all communications between Empire and Fleet Bank.

Foodcomm presents as an exhibit an email from Steven Levine, President of Empire, to Barry and Leacy. In the email Steven Levine stated that he was recruiting Fleet Bank to finance Outback Imports. Foodcomm contends that the email and subsequent documents produced by Defendants are evidence that Foodcomm's request numbers 25-28 seek relevant documents. We agree with Defendants that the requests are overly broad which will allow Foodcomm to peruse confidential Empire business documents which are mostly irrelevant documents. Although the scope of discovery is broad, Foodcomm has no right to view all communications between Empire and Fleet Bank, particularly regarding transactions that have little or no bearing on this case. Therefore, in regards to the July 18, 2003, motion to compel we deny the motion to compel responses to document request numbers 25-28.

In the July 18, 2003 motion to compel, Foodcomm also seeks the production of

communications between the law firm Culley Marks and Empire and between Culley Marks and Barry and Leacy. (document production request numbers 6-8). Foodcomm believes that Barry and Leacy are withholding documents based on their belief that the communcations are protected by the attorney-client privilege. Defendants claim that they have already produced all documents in their possession pertaining to request numbers 7 and 8 and Defendants state that they are not withholding any documents relating to the requests on the basis that there is an attorney-client privilege between Culley Marks and Barry or Culley Marks and Leacy. Therefore in regards to the July 18, 2003 motion to compel, we deny the motion to compel responses to document request numbers 7 and 8 as moot.

Request number 6 seeks the production of communications between Empire and Culley Marks relating to Barry, Leacy or Outback. Foodcomm contends that since Empire has produced some documents pertaining to request number 6, Empire has waived the attorney-client privilege for all documents pertaining to request number 6. Although, Empire has produced some non-privileged documents relating to request number 6, that does not mean that Empire has waived the attorney-client privilege for all privileged communications pertinent to request number 6.

Foodcomm also claims with respect to request number 6, that the attorney-client privilege is deemed to be waived under the crime-fraud exception. The attorney-client privilege is deemed to be waived if the client consults an attorney in order to further a crime or fraud. *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993); *U.S. v. Aldridge*, 484 F.2d 655, 658 (7th Cir. 1973); *Nobelpharma AB v. Implant Innovations, Inc.*, 930 F.Supp.1241, 1260 (N.D. Ill. 1996). The exception is not applicable if the party is seeking legal advice or legal assistance regarding a crime or fraud and the exception is not applicable simply because the communications relate to a

crime or fraud. *Nobelpharma AB*, 930 F.Supp. at 1260. Also, the crime-fraud exception can only be used to pierce the attorney-client privilege if the party seeking production presents "prima facie evidence that [the allegations of crime or fraud] have some foundation in fact" and the evidence is sufficient "to give colour to the charge. . . ." *Davis*, 1 F.3d at 609. Foodcomm has not met its burden of showing that the crime-fraud exception is applicable. We are not convinced that the communications sought in request number 6 were made in the furtherance of the alleged fraud against Foodcomm.

We note that in the instant motion to compel Foodcomm does not focus on whether or not the communications are privileged. Instead, Foodcomm argues that the privilege was waived and that the fraud-crime exception applies. We deny the motion to compel responses to document request number 6. However, we are not barring Foodcomm from claiming that the communications are not privileged communications. If Foodcomm discovers evidence that would suggest that the withheld communications pertaining to request number 6 are not communications that fall within the scope of the attorney-client privilege, then Foodcomm is still free to seek production and, if necessary, file another motion to compel those communications.

### III. Motion to File Second Amended Complaint

Foodcomm also seeks leave to file a second amended complaint. Leave shall be given freely to amend a complaint after a responsive pleading is filed if justice so requires. Fed R. Civ. P. 15(a). However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

5

amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1990). In the proposed amended complaint Foodcomm seeks to add six new defendants. Foodcomm could have filed an amended complaint which included the new defendants long ago. Foodcomm offers no explanation for this delay. Instead, Foodcom inexplicably claims that Defendants will not be prejudiced because this case is only in the "preliminary stage." This case was filed on October 10, 2002. Granted, there was an interim appeal in this case. However, that limited period does not justify Foodcomm's inaccurate characterization of the status of this case. Discovery is set to close in about a month. Dates for dispositive motions have been set. Defendants have already taken the depositions of Foodcomm's two principals and the parties are currently preparing to conclude all remaining discovery. It is ludicrous to suggest that this case is in the preliminary stage now, or even that it was so at the time of the filing of the motion to amend on September 11, 2003. These amendments could and should have been made sooner and there is evidence of a dilatory motive on the part of Foodcomm.

Foodcomm argues that delay alone is an insufficient reason to deny leave to amend a complaint. While that is true, delay is a sufficient reason if prejudice can be shown resulting from the delay. *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994). Also, the longer the delay "the greater the presumption against granting leave to amend . . . [and] extreme delay itself may be considered prejudicial." *Id.* (quoting *Tamari v. Bache & Co.*, 838 F.2d 904, 908 (7th Cir. 1988)). We are convinced that if we were to allow a second amended complaint to be filed at this juncture the Defendants would be unduly prejudiced. We also note that Foodcomm was already granted leave to amend its complaint once on October 30, 2002. Therefore, we deny Foodcomm's motion for leave to file its second amended complaint.

## IV. September 8, 2003, Motion to Compel

Foodcomm also filed a motion to compel on September 8, 2003, seeking to compel Empire to answer document production request number 34 from its first set of document requests and document production number 1 from its fourth set of document requests. Foodcomm seeks the production of documents relating to any redistribution agreements with any company. Foodcomm also seeks the production of documents relating to each of Empire's redistribution partners. Empire claims that it has entered into a redistribution agreement with only one commodity meat supplier, ConAgra, and Empire claims that it has produced all documents relating to the agreement. Foodcomm contends that it should have access to other third party agreements that Empire entered into in order to compare the structure of the other agreements and calculate damages. However, Empire points out that these other agreements do not involve the import of meat. For example, Empire entered into agreements concerning products such as Campbell's Soup and Very Fine Fruit Juice. Although, the scope of discovery is broad, we agree with Empire that Foodcomm is not entitled to the production of these completely unrelated third party agreements. We are not convinced that any of the other third party agreements would be relevant in this case. Any usage of the other agreements to calculate damages would be questionable and to the minute degree that they may possibly offer any assistance in damage calculations, the benefit to Foodcomm is greatly outweighed by the detriment to Empire. Particularly since Foodcomm is a competitor of Empire, it would be unreasonable to allow Foodcomm to view the agreements that Empire entered into with other companies unless Foodcomm has a legitimate reason to do so. Therefore, we deny Foodcomm's motion to compel

filed on September 8, 2003, seeking production of documents relating to distribution agreements.

## CONCLUSION

Based on the foregoing analysis, we deny Foodcomm's motion for civil contempt sanctions. We deny Foodcomm's motion to compel the production of documents relating to Culley Marks. In regards to Foodcomm's motion to compel the production of documents relating to Fleet Bank, we grant the motion in part. Defendants are ordered to produce all communications between Defendants and Fleet Bank that relate to Barry, Leacy, or Outback Imports, regardless of whether the parties are specifically mentioned in the documents. We deny Foodcomm's motion for leave to file a second amended complaint. We deny Foodcomm's motion to compel the production of documents relating to redistribution agreements. Foodcomm also filed an emergency motion to compel on October 27, 2003, seeking to compel the deposition of Steven Levine. The parties have since discussed this matter in court and set an agreed deadline for the deposition and therefore, we deny the emergency motion to compel as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 19, 2003